Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now in accordance with law. God save the United States and this honorable court. Please be seated. Last day of the week and four more cases to hear. Counsel, we're familiar with your cases. You only have 15 minutes to sign. So in the limited time that you have this morning, we need to get straight to the heart of your argument. We've read your briefs. The authority cited in your briefs. We've looked at at least portions of the record. So you need to make your main points this morning. We're probably going to have some questions, but be mindful of our time. When the red light shines, it's time to end. If you're answering a question from the court, of course, you'll be on our time and you'll save rebuttal time if that is something that you have. Our first our first case is Rosales-Mendez versus the attorney general, Mr. Johnson. Good morning, Your Honors. Kurt Johnson on behalf of Ms. Rosales-Mendez. This case concerns whether a non-citizen can be removed from the country in absentia, having failed to obtain either a lawful notice or actual notice of their removal hearing. I know you've read the briefing, as you just said, so I'll not repeat all the different arguments there. Of course, I'm happy to answer any questions. Otherwise, I'd like to focus on just three key points. The first two go to our two grounds for reversal, and the third goes to the government's principal counterargument. As to our first ground. For me, at least, the exception clause is the main thing I feel that you need to deal with, because if it applies, then there's no notice required. That is correct, if it applies. So we do not think it does apply. As we explained in our brief, we think Chenery actually forecloses the court going there, but I'll answer the question. I think there are two reasons to think about why Ms. Rosales-Mendez did provide an address where she may be contacted. That's the statutory language. The first is if we take her affidavit, which is unrebutted as true, that her boyfriend, acting on her behalf for this purpose, provided the correct address, then it's indisputable that she did provide an address where she was able to be contacted. That happened at the airport on June 24th. But even if we're going to assume the error came from Ms. Rosales-Mendez, again, taking her boyfriend as her sort of agent for this purpose, that doesn't mean that she didn't provide an address where she may be contacted. I think you can provide an address where you may be contacted, even if it's not pristine. So the post office... Well, if the notice wouldn't get there at the address that you provided, then you haven't provided an address where you may be contacted. That's correct, but the notice did get somewhere. It was not returned as undeliverable. Not where it needed to be. Well, so I think the... Missing the SW was a big deal. I think missing the SW corroborates her affidavit that she didn't actually receive the notice document. She was sworn to that. She was apprised of her duty to provide a correct address, right? She was apprised of her duty to provide an address where she may be contacted. That's the statutory language. In the advisal, in the NTA that she received and she signed the notice of receipt, it said you need to provide your address or have provided, as the statute says, and she had done that the day before at the airport on June 24th. But she was not apprised of any duty to correct her address thereafter. That advisal was in the notice of hearing, the putative notice of hearing, the second notice document that she never received. In this Court's decision in Dragomirescu, it adopted the Board's previous decision from a few decades ago in GYR, saying that at least when it comes to the forfeiture clause, the draconian, drastic consequence of having no notice at all, that can't attach unless you are given a specific advisal about what you need to do. And she was not advised of the review and correct duty. The notice of hearing had that, but not the notice to appear. We're bound by the Board's finding, aren't we, though, that the address was wrong? I mean, the Board found that, right? With respect, I do not think that they did, but what the IJ found was that the document was actually received by her at the address, or it was received by her. The Board, I think, affirmed that finding. That was the actual finding that it affirmed. And then it sort of dealt with the hypothetical possibility that her boyfriend had provided the incorrect address. I don't think it actually found that there was an incorrect address provided. But again, I think the critical question is, even if there is this typographical error, the lack of the missing directional, that doesn't mean that she didn't comport with her statutory duty to provide an address where she may be contacted. In Dragomirescu... Could you just play that out a little bit and explain how wrong of an address she would have had to have given to not comply with that? What exactly is the line that you would suggest that we draw on that? I think if it's returned as undeliverable. So in footnote 5 of Dragomirescu, there was actually an error in the... So if it had said Orlando, and it hadn't been returned as undeliverable, that would be okay, too, because she would have provided an address? Well, that's not an address where she may be contacted. Well, isn't that true, too, of the address that was provided? I think it's hard to imagine that the letter would be not returned as undeliverable if it has that sort of egregious error. I mean, if the street address is one that's a numbered street, lots of cities have numbered streets. They won't necessarily come back as undeliverable. But it does show that the address that was provided was effective. Now, if she doesn't live in any address remotely associated with that, it's not a typographical error, it's not a street instead of road, that sort of thing, then I do think forfeiture is on offer. If you move, forfeiture is on offer. That's Dragomirescu. But in that decision, footnote 5, the court noted that Marietta, Georgia was spelled wrong, and it said that would not have flummoxed the postman. He would have gotten it there, and it was not returned as undeliverable. I think we have the same situation here. So what the noncitizen needs to do is provide an address that the post office can actually use as effective. Once they've done that, they have discharged their statutory duty. I'd also like to address the CFR provision. That's 8 CFR 1003.15, I believe. It is something the government relies on to say that, you know, even if Ms. Rosales-Mendez had provided an address, she had fulfilled her statutory obligation to act immediately. So to go back to the statute, 1229A1F, Little Roman numeral 1, says you have an immediate duty to provide your address once you're served with the NTA, and then you have subsequently an immediate duty following any change to let the government know about the change. Those are the statutory duties. Now, the government has passed this regulation that I think goes beyond the statute and says, you need to review and correct your address. That's the CFR provision. But as I explained, she was never advised of that provision. So under the board's decision in GYR and Dragomirescu, the harsh consequence of forfeiture removal without any notice can't attach to her. As we also explained in our briefing, she literally could not have complied with the provision. So it says that you need to update the government of an error in your address within five days of service of the NTA at the court where the NTA is filed. But here, the NTA had not been filed in the immigration court for many, many, many months, which means that there was no possibility for Ms. Rosales-Mendez to actually comply with that regulatory duty. Therefore, she can't be tasked with... But she was given a notice to appear. She was. Yeah, and it said, did it not, that she had to notify the immigration court immediately if she changed her address and that if she failed to update her address or does not otherwise provide an address at which she may be reached during proceedings, then the government shall not be required to provide her with written notice of her removal hearing. That's what it said, right? That is what the NTA says, yes. But the NOH, the other document, goes farther and says if there's an error in your address, you need to correct it under sort of exclusio unius principles. The fact that the NTA didn't mention that separate duty means she was not advised of that duty. That duty came later in the NOH. That's the CFR provision. If there's an error in your address, let us know, correct it. All she was told is update your address if you move. And I'll highlight that the NTA not only... That is correct. Not any other statutory requirement that might obligate a noncitizen to change an address or update an address or correct an address? Yes. GYR turned on the NTA advisors and also the NOH advisors. I'll acknowledge, sorry, GYR. GYR was focused on the NTA, but it also talked about advisors that can come in a second document, the notice of hearing. And so I think the takeaway from the decision is you need to respond to the advisors, which you are given notice. If you don't have that specific advisal, then you cannot be subject to forfeiture. You lose entirely your right to notice. Could you address DaCosta-Gomez, our decision in that case, and your argument that it doesn't apply here? Sure. Sure. So DaCosta-Gomez held that you can have a valid A2 notice after a sort of invalid A1 notice. So under Perez and DeChavez, you have defective invalid A1 notices, but it said it is still possible to have an A2 notice that can count. It can be for the hearing that was missed. It can ultimately be the notice that allows the government to remove the noncitizen in absentia. But I think it's very important in that case. I think it's footnote 3 there. The court said the A2 notice followed a follow-on putative A2 notice because the hearing had been rescheduled four times. Yeah. It seemed like, I mean, I get that distinction between the cases, but it seemed, I was on the panel there, and it seemed like the sort of the driving force of the opinion was just, we want to make sure that you are getting the notice, or the notice requirements apply to the hearing that you missed and not one that was irrelevant. What do you say about that as a reading of DaCosta-Gomez? I would agree that was the driving force, but I do think the court also interpreted the change language or the postponement language, and it was important for the court in that decision that the A2 notice that counted there did actually change an earlier scheduled hearing under an earlier issued putative A2 notice.  That the second notice sequentially, which would have been the first notice of hearing, did not count. Yes. I do think that is the fair reading of the decision, and so ultimately the outcome turned out that we were dealing with, I think, the fourth notice. In that case, I think that's all clear from DaCosta-Gomez, but then Mendoza-Ortiz resolves any doubt because there, just like here, there is only two notices, the defective A1 notice and then a notice of hearing coming thereafter. So the court said because there was no earlier issued putative A2 notice, as there was in DaCosta-Gomez, that the hearing that would count, the one for the hearing that was missed, could not count as an A2 notice because it did not change or postpone a previously set hearing under a previously issued putative A2 notice. The Supreme Court has Singh, the case that DaCosta-Gomez disagreed with, upped this term and has heard argument. That's correct. Do you think we should wait for the Supreme Court's decision in Singh? I think you could, but I don't think you need to. I think Singh involves the Ninth Circuit's decision, and then we also have the Fifth Circuit's decision at issue.  We can't go forward under DaCosta-Gomez. So if the Supreme Court affirms the Ninth Circuit in Singh, that makes the law better for you, right? That is correct. But your point is that even if they adopt our position, they can't go forward under DaCosta-Gomez. you would still win. Under DaCosta-Gomez, yeah. Singh says you can really never have a subsequently valid A2 notice without ever having that A1 notice. DaCosta-Gomez, I think, fairly says you can, but it needs to be the right one. You have one more. Thank you. No, no, no. We have another question. I'll reserve the two minutes for rebuttal. What? The devil is that, in the details, is that the Supreme Court can, of course, decide not to follow either DaCosta-Gomez or Singh and come up with a different view of the statutory structure and what the language means and what it commands and all of that, right? And that's what gives me some pause about not waiting. The term is going to finish in about a month or so. So I have some pause about not waiting just to make sure, either way, that it doesn't affect our decision. But that's just my view. Yeah, that certainly is a possibility. I thought it was possible they would hand it down yesterday. They didn't. It will come in the next month. Of course, it's irrelevant if the exceptions clause applies. I don't think it's entirely irrelevant. I mean, to Judge Jordan's point, who knows exactly what they're going to say. But I do think one thing they could say is that, and I frankly think they have said this, the A-1 notice is really a nullity. It just doesn't count at all. And because you don't have any lawful notice kicking off the proceeding, any non-citizens. The exceptions clause says no notice is required if you fail to provide a correct address. No written. No address where you can be contacted. It does say that, but I don't think that duty comes in subsection F, and I don't think it can attach if the government has not carried its antecedent burden of providing the legal document. Okay. Thank you. Yep. Mr. Hogan. Good morning. May it please the Court, Brendan Hogan for the government. As my co-counsel discussed earlier, this case does turn on the forfeiture clause. Under 1229A1F, a petitioner has an affirmative obligation at all times to provide a correct address. And in this case, first she was personally served with a notice to appear in the charging document. She signed it. Her fingerprint is on it. And the consequences were read to her in Spanish. On top of that, the language of the charging document is clear. Right below her name, it lists the address omitting the southwest directional. And below that, it says that she has to provide an address where she can be reached at all times in proceedings. It's very clear. And Ms. Rosales' attempt to read that narrows it. He says she was never given notice of the opportunity to correct her address. Do you agree with that? No, Your Honor. I mean, I know the regulations say that the alien has an obligation to correct the address. But is there a notice requirement that it's antecedent? Well, even in 1229A1, the obligation is what has to be included in the charging document. And the statute is clear that any change in address must be provided to the immigration court. And unfortunately, she did not do that. She waited, but she didn't do anything after personally receiving it. Then the NTA was filed with the immigration court, and it was 60 days before the hearing that occurred for the notice that she received was held. She had ample time to correct her address, and unfortunately, she didn't. And that's what this case turns on, ultimately. Under the statutory scheme, if you don't provide an address, how can the government ever provide you notice? And on that alone, her petition review should be denied. On a separate issue, and I know your brief sort of says it doesn't really matter for other reasons, but under DaCosta-Gomez, was the notice of hearing to effective notice under A2? First, the government would agree with Your Honor that if you do reach the notice provision under A2, it would be better to conserve judicial resources to find out exactly what the Supreme Court is thinking. And if you get to that part of this case, it should be held for Verinder Singh and Campos Chavez. However, the government stands by its argument in the brief that this is a valid notice under A2. It's disjunctive, so therefore, it's only either or. She got the A2 notice, and it provided the time and date and the location. Right, but as a statutory matter, if we're following statutory language, the A2 is about a change, right? And there's nothing to change because the initial NTA didn't have a time or a place for the hearing. Well, as the Supreme Court set out to tell Your Honor, any should be given a broad and expansive meaning in legislation. And that would also, petitioners view that under A2, any change can never mean scheduling a first hearing, that you can't change nothing to something, but throw the entire statute in disarray, because under A1, they also have an obligation to provide any change in their address. So if we follow his interpretation, a petitioner would just never provide an address, and therefore, they would never have to update it if that's what any change means. No, but that's, well, that's not true, because the Costa Gomez says if you issue a notice of hearing after a defective NTA, and then you send the second notice of hearing, which modifies the first, you've sat, the government has satisfied its obligations, and you have proper A2 notice. But if you have both, this is the way I read the Costa Gomez, if you have a defective NTA, and you have a defective notice of hearing that follows, and that's all you have, then the government has issues, putting aside the exceptions clause thing. But on that side of the case, the government has a problem, because it's got a defective NTA under A1, and then a defective notice of hearing under A2, and if that's all you have, then in absentia proceedings can't follow. But with respect, I think the Costa Gomez was also ambiguous about whether, about when exactly the hearing was rescheduled, whether it was that first hearing notice that her purse provided the change, or the secondary notice after that, which would be a distinct distinction. But again, this case turns on the statutory notice of address obligations under the statute. The petitioner has to clear that burden first. She is not. I mean, at some level, we have to look at the statute in a practical way. I mean, you sent notice to the address that you were given, correct? Yes. I mean, is there anything else you could have done to provide notice, besides send notice to the address that you were given by the person that needed the notice? And again, this is not a case, I think, in unpublished decisions this Court has dealt with, when a petitioner is not aware that a third party provided an address without them knowing, and that was incorrect. I mean, she asked the immigration officers to call her boyfriend for her benefit, which he then relayed the address, and she had six months, even before the NTA was filed, to try to do something to correct that. She had it in her hand. And then after that, another 60 days. What she had in her hand reflected the address that her boyfriend had provided. Correct, Your Honor. It's directly under her name. Do we know, one way or the other, whether this was actually delivered to an address somewhere? I believe that was the immigration's point in the first decision, denying the initial motion to reopen, is the petitioner really didn't provide any evidence about, like... Mr. Hogan, you need to speak up a little bit. I'm sorry, I apologize, Your Honor. Some of us are aging. I apologize. Well, we're all aging. But I think that was the immigration... Some of us are aged. I'm sorry. I apologize. I believe that's the immigration judge's point in the first decision, denying the initial motion to reopen, is, other than saying the directional was omitted, she really hasn't provided any evidence, like, why what? If she was living with her boyfriend for that long, she would have to provide some kind of evidence that I was there at this address with the Southwest Directional. And she's had shifting claims throughout the proceedings. In the initial motion in her affidavit, she said, the address exists, my boyfriend provided it correctly, the immigration officers wrote it down. But at the same time, her counsel argued the opposite, that the boyfriend provided it correctly to the immigration officers. Well, isn't the important thing is that the board found that the address was an incorrect address, that her boyfriend provided it incorrectly? For the purposes of the statute, the board found it... And we're bound by that finding, I think. Yes, Your Honor. Unless the record compels a different result. That is correct, Your Honor. Did the board do anything with the exceptions clause or language? Well, yes, Your Honor. They found that the petitioner's case did not comply with her statutory obligation to provide an address where she could be reached, regardless of her competing claims about why it couldn't get there. And that no notice was required. And no notice was required. I should have phrased the question better. Your colleague suggests that we should not reach that issue under Chenery and that line of cases which indicate that we're limited to the bases given by the agency and its decision-making. I think that... That's what I wanted you to respond to. I'm sorry. I'm sorry. I believe that... I don't think it's a Chenery violation, Your Honor. I think that the issue is so clear-cut that the brevity of the board's analysis speaks for itself, that you've admitted to us that you have not given us an address where you can be reached. Therefore, the statute applies. Even if the agency doesn't rely on that rationale? But the agency did rely on it. They cite the statute, Your Honor. 1252A2B is what they cite, which cites 1229A1F, which is the statutory obligations. And I believe in DaCosta-Gomez, they cite the companion statute of the statutory obligation. I didn't mean this case. I mean, you said if it's clear. Yes. But it's not just that it's clear. It's that the agency relied on the rationale. Yes, Your Honor. I got it. I got it. I mean, what the board said was that the petitioner, quote, waived her statutory right to notice of her removal hearing. Correct. And then they cite the statute. By providing an incorrect address. Correct, Your Honor. Does the panel have any other questions? I don't hear any. Thank you, Mr. Hogan. Thank you, Governor Resslin. Mr. Johnson. Two minutes. Thank you, Your Honor. Just a few brief points. So I don't think the board actually found it was incorrect. It said if the address provided by the boyfriend was incorrect, then she would have waived her right to notice. So I think the actual finding was that the presumption of delivery had been unrebutted. Judge Brasher, you asked what else the government could have done. It could have done in-person service. So the statute actually says that service by mail is really only on offer if in-person service is not practicable. There's nothing in the record here suggesting that in-person service was not practicable. They did have her phone number. They had an address. They knew she lived in Miami. I think the process server could have found her. We cite the concurrence from Judge Keplech flagging that often the government doesn't show anything going to practicability and just jumps into service by mail. Congress wanted in-person service to avoid precisely the sorts of issues that have arisen in this case. I read that what the board found was an alternative finding. The board said it was a proper notice. But even if not, she waived her statutory right to notice by providing through her boyfriend an incorrect address. Okay. I read it differently. I think it's a little bit of a confusing syntax, but I hear you, and that would foreclose our Chenery argument if that's how you read the decision. The government said that the statute imposes a duty at all times to provide a correct address. I don't think that's true. It says immediately in 1229A1F, little Roman numeral 1, and then in little Roman numeral 2. So there are two discrete immediate duties. Following service of the NTA, she provided an address, and then the other one is following a move. If there's questions about that, I point the court to 8 U.S.C. 1305A, which is the provision dealing with the sort of record system the government is supposed to set up. And it says that the alien needs to provide an address. What?  Oh, my apologies. Thank you, Your Honors. Thank you. Thank you, Mr. Johnson.